BURKE et al., Appellants,

v.

SCHAFFNER, Appellee.

[Cite as *Burke v. Schaffner* (1996), 114 Ohio App.3d 655.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE04–507.

Decided Oct. 22, 1996.

*Plymale & Associates* and *John N. Gonzales,* for appellants.

*Law Office of Alan Wayne Sheppard, Alan Wayne Sheppard* and *Andrew D. Wachtman,* for appellee.

TYACK, Judge.

On October 4, 1994, Gary Burke and his wife, Tammy Burke, filed a complaint in the Franklin County Court of Common Pleas, naming Kerri Schaffner as the lone defendant. The lawsuit arose as a result of serious injuries sustained by Gary Burke on October 26, 1993, when he was struck by a pickup truck driven by Martin Malone, with whom the Burkes settled prior to commencing litigation. The incident occurred during a party held for officers of the City of Columbus Division of Police, Eighth Precinct.

There is no dispute between the parties that the pickup truck accelerated suddenly, causing Mr. Burke to be pinned between it and a parked car. The Burkes' complaint alleged that Schaffner, who was seated directly beside the driver, negligently stepped on the accelerator as she moved over on the front seat to make room for two other passengers getting into the truck.

Prior to trial, counsel for Schaffner filed a motion for summary judgment. Appended to the motion was an affidavit in which she stated, "At no time while I was in the vehicle did my foot hit the accelerator * * *." In their memorandum contra, the Burkes relied upon deposition testimony of Malone, which included his denial of fault and resulting conclusion that Schaffner must have stepped on the accelerator. In a decision rendered August 24, 1995, the trial court denied the motion, holding that there existed a genuine issue of material fact as to who hit the accelerator.

The case proceeded to a trial by jury on March 11, 1996. Essentially, plaintiffs' theory, based in large part upon Malone's testimony, was that Schaffner stepped on the accelerator. To the evident surprise of plaintiffs' counsel, the defense rested without calling any witnesses, including Schaffner herself. Plaintiffs' counsel unsuccessfully attempted to reopen their case or, alternatively, to call the defendant as a "rebuttal" witness.

On March 14, 1996, the jury returned a verdict in favor of Schaffner. The jury's response to an interrogatory submitted with the verdict forms indicated the jury's express finding that Schaffner was not negligent.

Gary Burke and Tammy Burke ("appellants") have timely appealed, assigning seven errors for our consideration:

"First Assignment of Error

"The trial court erred in overruling plaintiffs' motion for a directed verdict.

"Second Assignment of Error

"The trial court erred by not instructing the jury regarding alternative liability.

"Third Assignment of Error

"The trial court erred by instructing the jury regarding assumption of the risk and comparative negligence.

"Fourth Assignment of Error

"The trial court erred by not allowing plaintiffs to reopen their case to call defendant as a witness; or alternatively, to allow defendant to be called in plaintiffs' rebuttal case.

"Fifth Assignment of Error

"The trial court erred by failing to instruct the jury of the presumption created when a party, whose best interest it is to call a witness, fails to do so without adequate explanation.

"Sixth Assignment of Error

"The trial court erred by admitting Mr. Burke's privileged alcohol test results into evidence.

"Seventh Assignment of Error

"The trial court improperly restricted plaintiffs' voir dire and improperly dismissed, for cause, a handicapped juror."

Because the seventh assignment of error raises issues attacking the jury selection process and, thus, is potentially dispositive of the appeal, we address this alleged error first.

Appellants contend that the trial court committed two prejudicial errors during voir dire. First, appellants argue that the trial court erred in restricting the questioning of potential jurors regarding the so-called "insurance crisis" and the "negative publicity surrounding recent plaintiff verdicts." Second, appellants argue that the court erred in excusing for cause a deaf juror.

Preliminarily, we note the narrow standard of review by which we are bound in reviewing the claimed voir-dire errors. The scope of voir dire falls within a trial court's discretion and varies with the circumstances of a particular case. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304, 314–315, citing *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920–921. Rarely does a reviewing court find a trial court's restrictions on voir dire to be an abuse of discretion. *Lundgren,* citing *State v. Beuke* (1988), 38 Ohio St.3d 29, 39, 526 N.E.2d 274, 285–286. The test is one of reasonableness. *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 682, 595 N.E.2d 360, 368–369.

Our review of the transcript reveals that the trial court actually allowed appellants' counsel considerable latitude in his voir dire. Counsel was permitted to voir dire jurors at length regarding their perceptions of the judicial system in general and "frivolous lawsuits" in particular, whether they had ever been sued,

and whether they had ever sued another person or made any claim for any type of injury. The only actual limitation disclosed by the record was related to the so-called "McDonald's coffee" case. The trial court granted appellants' counsel more than ample opportunity and latitude during this line of questioning. Because the trial court imposed extremely reasonable and minimal restrictions on voir dire, we find no abuse of discretion.

The second part of this assignment of error alleges error by the trial court in excusing for cause a deaf juror. Again, we are bound in our review by an abuse of discretion standard. See *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus. In this respect, "abuse of discretion" implies that the trial court acted "unreasonably, arbitrarily or unconscionably." *Sowers v. Middletown Hosp.* (1993), 89 Ohio App.3d 572, 581, 626 N.E.2d 968, 974, citing *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Under the particular circumstances presented below, the trial court did not abuse its discretion.

R.C. 2313.42 sets forth the basic qualifications of persons to serve as jurors, in addition to specific grounds for challenging for cause those otherwise qualified. Appellants contend that there was no "legal cause" to excuse the deaf juror since he met those basic qualifications and expressly avowed that he would be fair and impartial and essentially would be able to follow the law. R.C. 2313.42(J).

Appellee counters that the trial judge acted well within his discretion in excusing the juror for cause due to certain practical concerns the juror might have in "following the law." Specifically, appellee points to the trial judge's expressed concerns regarding the litany of *potential* difficulties which could arise as a result of the following: the juror's ability to read lips, the juror's inability to assess the demeanor of witnesses, the necessity of having an interpreter conveying the testimony to him and related interruptions during trial, the juror's problem participating in group discussions, and complications stemming from an interpreter's participation in the deliberations process.

Our review of the voir dire transcript reveals that, while the trial court did indeed express these concerns, which we are not prepared to sanction as legitimate challenges for cause, the court's decision to excuse the juror was ultimately based upon the unavailability of an interpreter to assist the juror. Since the trial court did not act unreasonably or arbitrarily, we cannot say that the court abused its discretion.

Having found no abuse of discretion in voir dire, the seventh assignment of error is overruled.

In their first assignment of error, appellants argue that the trial court erred in failing to grant their motion for a directed verdict. Specifically, appellants reason as follows. They "proved" that Schaffner was one of only two persons

who could have negligently harmed Burke. The only other potentially responsible person, Martin Malone, called by appellants as a witness, testified that he did not step on the accelerator. Thus, since Schaffner failed to present any evidence to overcome her burden to demonstrate that she did not cause the harm, appellants should have been granted a directed verdict.

In addressing this specific contention, appellants necessarily incorporate issues pertaining to the doctrine of alternative liability, the subject of their second assignment of error. Thus, we address these arguments jointly.

Preliminarily, we note the well-established standard to be applied by a trial court in ruling on a Civ.R. 50(A) motion for a directed verdict. In *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, the Supreme Court of Ohio stated:

"The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination * * *. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318, 89 N.E.2d 138]; *Ayers v. Woodard* (1957), 166 Ohio St. 138 [1 O.O.2d 377, 140 N.E.2d 401] * * *." See, also, *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 281–282, 477 N.E.2d 1145, 1146–1147, and *Mantua Mfg. Co. v. Commerce Exchange Bank* (1996), 75 Ohio St.3d 1, 4, 661 N.E.2d 161, 164.

As discussed below, the evidence, construed most strongly in favor of the defendant, Schaffner, did not support a directed verdict, as reasonable minds could reach different conclusions as to whether or not defendant was negligent.

Appellants' argument relies heavily upon the testimony of Martin Malone, who, as indicated above, unequivocally denied stepping on the accelerator. Appellants contend that the doctrine of alternative liability mandates a finding that since Schaffner did not testify or otherwise present evidence, she failed to satisfy her burden to prove that she was *not* negligent. Appellees counter, and the trial court so held, that the doctrine of alternative liability is not applicable to this case.

The doctrine of alternative liability was adopted by a narrow majority of the Supreme Court of Ohio in *Minnich v. Ashland Oil Co.* (1984), 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199, at the syllabus:

"*Where the conduct of two or more actors is tortious,* and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to

prove that he has not caused the harm. (2 Restatement of the Law 2d, Torts, Section 433[B][3], adopted.)" (Emphasis added.)

In this case, the trial court found alternative liability (and thus, burden shifting) to be inappropriate based upon a narrow interpretation of *Minnich*, limiting its application to cases involving multiple defendants, *each* of whom acted tortiously. The trial court rejected the doctrine based upon appellants' theory that *only one* of two persons stepped on the accelerator—either the named defendant, Kerri Schaffner, or Martin Malone, the latter of whom denied fault.

Appellants acknowledge the current status of the doctrine in Ohio, citing pertinent case law; however, they construe the case law in a manner which broadens the scope of the doctrine to include situations involving a single negligent act committed by one potentially unidentifiable person, regardless of that person's status as a party or nonparty. The trial court rejected this expansion of the doctrine.

We too reject such a broad interpretation. We agree with the holding of the trial court and find its reasoning to be sound. Plain language in *Minnich* lends support to this narrow interpretation:

"It should be emphasized that under this alternative liability theory, plaintiff must still prove: (1) that *two or more defendants committed tortious acts,* and (2) that plaintiff was injured as a proximate result of the wrongdoing· of one of the defendants. Only then will the burden shift to the defendants to prove that they were not the cause of plaintiff's injuries. *This doctrine does not apply in cases where there is no proof that the conduct of more than one defendant has been tortious.*" (Emphasis added.) *Id.* at 397, 15 OBR at 512, 473 N.E.2d at 1200. See, also, *Goldman v. Johns–Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691.

■ The rationale for the doctrine of alternative liability, and the burden-shifting exception, is not applicable in circumstances where only one person has acted tortiously. The Supreme Court of Ohio has consistently reiterated the rationale justifying the seldom-employed burden shifting:

"[T]he reason for the exception is the unfairness of permitting tortfeasors to escape liability simply because the nature of their conduct and of the resulting injury has made it difficult or impossible to prove. which of them caused the harm. * * * " *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 218, 556 N.E.2d 505, 510.

■ Schaffner argues, and the trial court agreed, that the doctrine further requires that the multiple negligent persons be named as defendants in the litigation; if all negligent actors are brought before the court, then the burden

shifts to each of them to disprove causation. We agree. In *Huston*, the court was careful to note:

"In order for the burden of proof to shift from the plaintiffs under 2 Restatement of the Law 2d, Torts, Section 433B(3), *all tortfeasors should be before the court, if possible.* See Comment *h* to Section 433B(3) ('The cases thus far decided in which the rule stated in Subsection [3] has been applied all have been cases in which all of the actors involved have been joined as defendants.'); *Sindell v. Abbott Laboratories* (Cal.1980), [26 Cal.3d 588, 163 Cal.Rptr. 132, 138–140] 607 P.2d 924, 930–931; *Summers v. Tice* (Cal.1948), [33 Cal.2d 80] 199 P.2d 1." (Emphasis added.) *Id.* at 219, 556 N.E.2d at 510.

The Supreme Court of Ohio has continued to limit the application of alternative liability to "unique situations," all of which have required a plaintiff to satisfy a threshold burden of proving that *"all the defendants* acted tortiously." (Emphasis added.) *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 687–688, 653 N.E.2d 1196, 1203, citing *Goldman, supra.*

Only upon a plaintiff's showing that *each* of the multiple defendants acted tortiously should the causation burden shift to and among the *defendants,* who have *each* created a "substantially similar risk of harm." *Id.* at 688, 653 N.E.2d at 1203. That rationale simply does not apply to these facts, since appellants attempted to prove that a single tortfeasor, Schaffner, committed a single tortious act, to the exclusion of the only other potentially responsible person, Martin Malone, whom appellants did not sue and, in fact, attempted to exculpate during trial.

While case law on this issue is scant, research reveals that our holding is generally in accord with those courts that have addressed this particular question. In *Fiorella v. Ashland Oil, Inc.* (1993), 92 Ohio App.3d 411, 635 N.E.2d 1306, the Summit County Court of Appeals, construing *Minnich, supra,* held that the failure to join as defendants all potentially responsible tortfeasors precluded the application of alternative liability. The court cited cases from numerous other jurisdictions, applying and adopting the following reasoning:

"In *Vigiolto v. Johns–Manville Corp.* (W.D.Pa.1986), 643 F.Supp. 1454, 1457, a federal district court rejected application of the alternative liability theory in a case where all the possible wrongdoers were not before the court, supplying its reasoning as follows:

"The *sine qua non* of § 433B(3) liability [alternative liability] is proof that harm has been caused to plaintiff by *at least one* of the multiple [defendants] sued by the plaintiff. * * * [I]f plaintiff cannot prove who caused his injuries and does not name as defendants *all* who *possibly could have,* plaintiff has not proved that *at least one* of the named defendants caused the harm. * * * [T]he

plaintiff must name as defendants all who could have caused the complained of injury.' (Emphasis *sic.*)" *Fiorella,* 92 Ohio App.3d at 416, 635 N.E.2d at 1309.

█ As Schaffner was the only defendant before the court, there was no other named defendant to whom the burden could or should have shifted. The trial court properly ruled that alternative liability was inappropriate under these circumstances and, thus, properly rejected the requested jury instruction. Further, since alternative liability was not applicable, the defendant had no burden to present evidence that she did not cause the harm. As a result, the trial court did not err in overruling appellants' motion for a directed verdict, since reasonable minds could differ in concluding who, if anyone, was negligent.

The first and second assignments of error are overruled.

In their third assignment of error, appellants argue that the trial court erred in instructing the jury regarding assumption of the risk and comparative negligence. Appellee counters that the trial court was correct in its determination that there was some evidence before the jury which could support a finding that Burke's own negligence caused or contributed to his injuries; he was arguably intoxicated and moved from a safe area of the parking lot to one of obvious danger in the path of the truck.

█ Any claimed error here must be deemed harmless and nonprejudicial, since the jury, by interrogatory, expressly found that the defendant was not negligent. This finding "resolved the dispositive issue in this case obviating the need for the jury to address the affirmative defenses, including assumption of the risk." *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 466, 6 OBR 515, 519, 453 N.E.2d 705, 709. Since the jury did not need to consider or compare any purported negligence of Gary Burke, this assignment of error is overruled.

In their fourth assignment of error, appellants argue that the trial court abused its discretion in refusing to allow them, after both parties had rested, to reopen their case or, alternatively, to call Schaffner as a "rebuttal" witness.

█ As noted above, the defense rested without calling any witnesses, a strategy which obviously was not anticipated by appellants' counsel. In appellants' belated attempts to examine Schaffner as a witness, they first sought to reopen their case to call Schaffner to testify as if on cross-examination. Appellants concede that they could have done so during their case-in-chief. However, they now argue, their examination would have been limited by Evid.R. 607 restrictions against impeaching the credibility of one's own witness based upon a prior inconsistent statement.

Notwithstanding appellants' failure to raise this argument below, we nevertheless address it. Evid.R. 607 specifically exempts from its operation statements

admitted pursuant to Evid.R. 801(D)(1)(A) (prior statement by witness is not hearsay), Evid.R. 801(D)(2) (admission by party-opponent is not hearsay), and Evid. 803 (list of hearsay exceptions where availability of declarant is immaterial). Thus, appellants have not demonstrated how Evid.R. 607 impaired, or would have impaired, their ability to cross-examine the defendant.

██ The trial court also refused to allow appellants to call Schaffner as a "rebuttal" witness; since the defense rested without presenting any witnesses, there was no "new" evidence to rebut. The trial court rejected, as do we, appellants' suggestion that "rebuttal" was necessary as a result of Schaffner's opening statements and cross-examination of appellants' witnesses. As noted by the defense, opening statements do not constitute evidence and the only evidence presented here was that of appellants.

This court addressed a substantially similar issue in *Moore v. Retter* (1991), 72 Ohio App.3d 167, 174, 594 N.E.2d 122, 126–127, in which we held:

"A party upon whom the affirmative of an issue rests is bound to give all his evidence in support of the issue in the first instance, and can only give such evidence in reply as tends to rebut the new matter introduced by his opponent. *Potts v. First–Central Trust Co.* (App.1940), 37 Ohio Law Abs. 382, 386, 47 N.E.2d 823, 826." See, also, *Fireman's Fund Ins. Co. v. Mitchell–Peterson, Inc.* (1989), 63 Ohio App.3d 319, 330, 578 N.E.2d 851, 857–58.

Appellants have not demonstrated that the trial court abused its broad discretion in enforcing this basic rule of trial procedure requiring a plaintiff, absent special circumstances, to present his or her evidence in its entirety during the case-in-chief. See R.C. 2315.01.

The fourth assignment of error is overruled.

In their fifth assignment of error, appellants contend that the trial court abused its discretion in failing to instruct the jury regarding the "presumption" created when a party, in whose best interest it is to call a witness, fails to do so without adequate explanation.

██ Each party had the opportunity to call the defendant as a witness and each decided not to do so. Significantly, each party also had the opportunity to argue to the jury, and did indeed do so, the unfavorable *inference* it was *permitted* to draw as a result of the other party's decision. Specifically, appellants' counsel said the following during closing argument regarding the defendant's failure to testify on her own behalf:

"Ladies and gentlemen, she didn't testify. She didn't get up here on this witness stand. She wasn't sworn to tell the truth, she wasn't placed under oath,

and she didn't tell you that she didn't do it. She didn't tell you what her lawyer promised you she would tell you in opening statements. * * * "

The argument assailing defendant's failure to testify goes on for at least five pages of transcript.

The record reveals no abuse of discretion in the trial court's refusal to grant the requested jury instruction. Therefore, the fifth assignment of error is overruled.

Finally, in their sixth assignment of error, appellants argue that the trial court erred in admitting into evidence the "irrelevant" and/or "privileged" results of the blood alcohol test performed on Burke following the accident.

Regardless of the probable waiver of any claimed physician/patient privilege resulting from the filing of this lawsuit, appellants cannot demonstrate any prejudice resulting from the jury's knowledge that Mr. Burke had a "significant" level of alcohol in his system. As we discussed above, any negligent or other conduct by Burke became an inconsequential issue upon the jury's determination that the defendant was not negligent.

The sixth assignment of error is overruled.

Having overruled all the assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETREE, P.J., and CLOSE, J., concur.