[Cite as *Pippo v. Fitzgerald*, 2018-Ohio-3303.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY


Julia Pippo, et al.                                    Court of Appeals No. OT-17-026

      Appellants                              Trial Court No. 15-CV-229C

v.

Kevin Fitzgerald, et al.                       **<u>DECISION AND JUDGMENT</u>**

      Appellees                                Decided:  August 17, 2018

* * * * *

Todd O. Rosenberg and Joseph G. Paulozzi, for appellants.

Raymond H. Pittman, III, Robert J. Huebner, Timothy C. James
and Matthew T. Davis, for appellee Kevin Fitzgerald.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common

Pleas which entered a judgment on a jury verdict in favor of appellees.  For the reasons

set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** On July 23, 2015, as amended on November 19, 2015, appellants Julia Pippo, Ruth Pippo, and Alan Reneau filed a complaint against appellees, Kevin Fitzgerald, Thomas Fitzgerald, Intact Insurance Co., and SB Island Club Golf Carts, LLC, setting forth claims of negligence and recklessness among other causes of action. Appellants alleged they suffered damages on August 12, 2014, when appellant Julia Pippo, who was visiting the Island of Put-in-Bay, was ejected from the golf car (a/k/a "golf cart") driven by appellee Kevin Fitzgerald. Appellee Thomas Fitzgerald is Kevin Fitzgerald's father who allegedly signed the golf car rental agreement with appellee, SB Island Club Golf Carts, LLC. Appellee Intact Insurance Co. allegedly insured the Pippo family vehicles. Appellant Julia Pippo alleged she suffered a brain injury and other physical and emotional damages from being violently thrown from the golf car driven by Kevin Fitzgerald in a negligent and/or reckless manner. Appellants Ruth Pippo and Alan Reneau, Julia Pippo's mother and step-father, respectively, alleged a loss of consortium for their daughter.

**{¶ 3}** The appellees generally denied the allegations. Discovery by the parties ensued, and the trial court ruled on various motions that limited the issues and parties for trial. A nine-day jury trial began on August 14, 2017, against the sole defendant, Kevin Fitzgerald, on the claims of negligence and/or recklessness by the sole plaintiff, Julia Pippo. On August 24, 2017, the jury returned a verdict in favor of appellee Kevin Fitzgerald. The jury verdict was journalized on September 6, 2017. Appellants then filed this appeal on October 4, 2017, setting forth two assignments of error:

2.

I.  The trial court failed to give the required jury instruction that Plaintiff-Appellant, Julia Pippo, could have met her burden of proof as to negligence by ruling out the defense theory.

II.  The trial court erred in granting summary judgment regarding the parental consortium claims.

{¶ 4} In support of their first assignment of error appellants argue the trial court gave an "incomplete" instruction to the jury of "a standard instruction that probability in establishing negligence must be determined by a preponderance/greater than 50 percent of the evidence."  To avoid the material prejudice resulting from the missing instruction, appellants argue the trial court was:

> required [to give] an explanatory jury instruction that Plaintiff-Appellant can establish probable negligence by ruling out the defense theory as one of two theories of negligence in the case * * * Plaintiff-Appellant was ejected off the side of the golf cart by a negligent left turn [by Defendant-Appellee] that was too sharp and too fast, [or] * * * Defendant-Appellant was not negligent if Plaintiff-Appellant slipped out the open hold in the rear of the golf cart because she was seated improperly.

Appellants argue the "jury instructions given did not account for the unique aspects of this case in which there were two competing theories explaining how Plaintiff-Appellant was ejected from the golf cart."  For legal support for their position that "Plaintiff-Appellant did not need to prove her claim if she could disprove the Defendant-Appellee's

3.

claim" (emphasis in original), appellants cite to 28 decisions from various Ohio state and federal courts.

{¶ 5} In response, appellees argue the trial court did not err by refusing "to give the instruction that plaintiff may establish proximate causation to a degree of probability by ruling out other possible causes of Julia Pippo's injuries" for four reasons. First, appellees argue the jury instructions "on burden of proof, negligence, and proximate causation" are undisputed by appellants and "all of which were standard instructions, properly stated the law." Appellees cite to standard Ohio Jury Civil Trial Instruction Nos. 303.03, 303.05, 303.11, 311.01, 401.01, 405.01 and 405.03. Second, appellees argue "the requested instruction was redundant at best and legally incorrect at worst" because "the law stated therein deals with the underlying admissibility of an expert's opinion." Third, appellees argue "the instruction requested by Ms. Pippo was not supported by the case law cited by Appellants." Fourth, appellees argue "any error with respect to the instruction would have been harmless" because "[t]he jury in this case did not find Mr. Fitzgerald negligent in the first place and therefore never considered proximate causation."

{¶ 6} We review how a trial court fashions instructions to a jury for an abuse of discretion. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, citing *State v. Comen*, 50 Ohio St.3d 206, 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore*

4.

*v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 7} However, we review de novo the question of whether a jury instruction is legally correct and complete in addition to being factually warranted by the evidence presented in the case. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22. Our review must encompass "the instructions as a whole to determine whether or not the jury was likely misled in a matter materially affecting the substantial rights of the party who claims error." (Citations omitted.) *Wolford v. Chekhriy*, 6th Dist. Lucas No. L-14-1103, 2015-Ohio-3085, ¶ 43. "The general rule is that an erroneous instruction does not necessarily mislead a jury." *Cromer* at ¶ 36, citing *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268, 274-275, 480 N.E.2d 794 (1985). The error will not be reversed unless material prejudice to the substantial rights of the adverse party is "affirmatively shown on the face of the record." *Id.* at ¶ 35, citing *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 461-462, 709 N.E.2d 162 (1999).

{¶ 8} Civ.R. 51(A) states "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The record reflects appellants complied with this rule with respect to the jury instruction that is the subject of this appeal. On July 26, 2017, appellants filed their proposed jury instructions, including No. 17:

5.

Plaintiff is not required to eliminate every possibility. However, an expert can establish probability by ruling out certain other possibilities provided that the expert's conclusion is based upon probability. *Stinson v. England*, 69 Ohio St.3d 451 (1994); *Minnich v. Ashland Oil Co.*, 15 Ohio St.3d 396 (1984); *Westinghouse Electric Corp. v. Dolly Madison Leasing Furniture Co.*, 42 Ohio St.2d 122 (1975); *Gedra v. Dalmer Co.*, 153 Ohio St. 258 (1950).

Appellees opposed that instruction on July 31, 2017, arguing:

[    I]t inaccurately describes the role of expert opinion testimony. The Jury alone has the duty to decide what weight to give expert testimony. OJI-CV § 209.11 [sic]. Plaintiff's proposed instruction, on the other hand, implies that an expert's opinion on probability conclusively establishes it. This would be an improper attempt at usurping the jury's fact-finding role, and its role in deciding what weight to give expert testimony. This instruction should not be presented, but if the Court wishes to retain some version of instruction on eliminating possibilities, the instruction must be changed to read "an expert can express an opinion as to probability by ruling out certain other possibilities." The Court must ensure the Jury is properly instructed on the role of expert testimony, and that nothing undermines the Jury's own role in evaluating that testimony.

6.

{¶ 9} Appellants responded on August 2, 2017, that instruction No. 17 is specifically authorized by the Ohio Supreme Court in *Stinson* and is to support the testimony of plaintiff's expert who "will testify as to various possible turns and speeds that can be ruled out by the evidence." Appellants further argued instruction No. 17 "specifically provides that ruling out other possibilities must be incorporated into a probability opinion. There is no indication that the expert's conclusion on probability is binding on the jury. (Defendant says 'implies' only)."

{¶ 10} Then on the last day of the trial on August 24, 2017, and prior to the trial court issuing its instructions to the jury, the trial court asked the parties, "Are there objections that need to be placed on the record at this point?" Appellants responded, "Yes, Your Honor. On instructions from Plaintiff's Jury Instructions that were [sic] not given, we object to * * * Plaintiff's Jury Instruction Number 17, probability and ruling out other possibilities not being given." At the conclusion of the objections, the trial court then stated, "I'm going to note the objections, and note the exceptions to the objections."

{¶ 11} The trial court's jury instructions are not filed in the record, but are reflected in the trial transcript for August 24, 2017, the last day of trial.

{¶ 12} The instructions stated the issues for the jury were negligence ("Was the Defendant negligent in any respect?"), proximate cause ("If so, was Defendant's negligence a proximate cause of any injuries sustained by the Plaintiff?"), recklessness ("Was the Defendant reckless in any respect? If so, was Defendant's recklessness a

7.

proximate cause of any injuries sustained by the Plaintiff?"), and comparative negligence ("Was the * * * Plaintiff negligent in any respect? If so, did her negligence contribute to proximately cause her own injuries, if any?"). Each of those issues was defined by the trial court, including the legal terminology of ordinary care, foreseeability, probability, reasonable certainty, reasonable probability, reasonable control, and reasonable speed.

{¶ 13} The trial court also explained to the jury the legal terminology for burden of proof, preponderance of evidence, preponderance, evidence, direct evidence, circumstantial evidence, inferences, opening/closing statements, statements ordered stricken, admissible evidence, weight of evidence, tests of truthfulness of witness testimony, forms of witness testimony, credibility of witnesses, opinion testimony, expert testimony, assumed facts by experts, under the influence of alcohol, remote cause, implied assumption of risk, duty to mitigate damages, damages, economic loss, noneconomic loss, reasonable value, permanent injury, compensatory damages, future damages, speculation, and aggravation. The trial court also gave special instructions on two matters not raised by this appeal.

{¶ 14} The trial court concluded its instructions by reviewing the jury interrogatories required to be completed before the jury could consider either of the separate plaintiff and the defendant verdict forms. The trial court explained the interrogatories "are questions that are designed to assist you follow through your deliberative process." Finally, the trial court stated, "The Court has instructed you on all the law necessary for your deliberations. Whether certain instructions are applicable may

8.

depend upon the conclusions that you reached or the facts, on the facts by greater weight of the evidence." Previously, the trial court stated, "It is your sworn duty to accept these instructions and to apply the law as is given to you by the Court. You are not permitted to change the law nor to apply your own idea of what you think the law should be." We presume the jury followed the trial court's instructions. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 194, citing *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992).

{¶ 15} "To establish actionable negligence, [plaintiff] must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 247 N.E.2d 732 (1969). If appellants fail to meet their burden to prove negligence by appellee Kevin Fitzgerald, he is not liable for the "substantially greater" conduct which is necessary to make his conduct reckless. *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus. If appellants fail to meet their burden to prove negligence by appellee Kevin Fitzgerald, the defense of contributory negligence is irrelevant. *Bush v. Harvey Transfer Co.*, 146 Ohio St. 657, 67 N.E.2d 851 (1946), paragraph four of the syllabus. Consequently, also irrelevant is any need to evaluate Ms. Pippo's comparative negligence, if any, on the issue of compensatory damages. *See* R.C. 2315.33.

{¶ 16} The record contains the signed jury interrogatories, journalized on October 1, 2017, evidencing the unanimous answer of "No" to Interrogatory No. 1, "Was

9.

Defendant Kevin Fitzgerald negligent?"  As a result of that "No" answer, the jury then signed the "Verdict Form in Favor of Defendant Kevin Fitzgerald," journalized in the record on August 25, 2017, and the trial concluded with that verdict.  The trial's conclusion was consistent with the trial court jury instruction, "If you find for the Defendant on the issues of recklessness and/or negligence, then you will not need to address the issue of damages [to the Plaintiff]."

{¶ 17} Appellants argue the jury was misled into thinking appellants had to prove "negligence by greater than 50 percent of the evidence" without instruction No. 17 because appellants "reasonably ruled out the defense theory at trial."  Appellants urge us to adopt their interpretation from the Ohio Supreme Court's *Stinson* decision to find the trial court's jury instruction on proximate cause was incomplete because there was an alternative law to instruct the jury, specifically "an expert can establish probability by ruling out certain other possibilities provided that the expert's conclusion is based upon probability."  We disagree with appellants' interpretation of *Stinson* and its progeny.  In that decision the Ohio Supreme Court instructs us:

> The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability.  An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue.  Inasmuch as the expression of probability is a condition precedent to the admissibility of expert opinion regarding

10.

causation, it relates to the competence of the evidence and not its weight. Consequently, expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue.

(Citations omitted.) *Stinson v. England*, 69 Ohio St.3d 451, 454, 633 N.E.2d 532 (1994), paragraph one of the syllabus. Thus, the Ohio Supreme Court's decision on "probability" was for the competence of expert testimony evidence with respect to its admissibility. The Ohio Supreme Court left undisturbed the jury's role to weigh the evidence when evaluating a party's burden of proof of the existence of facts by a preponderance of the evidence. Appellants retained the burden to prove appellee Kevin Fitzgerald's negligence was "probable" with "a greater than fifty percent likelihood that it produced the occurrence at issue," i.e. Ms. Pippo's injuries.

{¶ 18} As the Ohio Supreme Court further explained in *Stinson*:

In order to present a jury question and avoid a directed verdict, appellants were required to satisfy the burden of production by establishing a prima facie case [of negligence]. This burden is satisfied by adducing competent evidence supporting the existence of a duty, breach of the duty, causation based on probability and damages. Once a prima facie case has been demonstrated, the adverse party may attempt to negate its effect in various ways. He may cross-examine the expert of the other party. He may

adduce testimony from another expert which contradicts the testimony of the expert for his adversary. Further, he may adduce expert testimony which sets forth an alternative explanation for the circumstances at issue. If this last approach is pursued, the evidence directed to the alternate explanation is governed by the same standard of admissibility applicable to the evidence adduced by his adversary.

*Id.* at 455-456. The trial record shows at the close of plaintiff's case, defendant moved for a directed verdict. Defendant argued plaintiff's expert's opinion that defendant's negligent driving "probably" caused plaintiff's injuries was without any valid basis to support his underlying assumptions, including lack of corroboration from the eyewitnesses. Plaintiff opposed. The trial court denied defendant's motion stating, "Well, sounds like wonderful arguments to the jury. * * * We are talking about credibility of witnesses here and this is why we have a jury, so I am going to overrule your motion at this point."

{¶ 19} Appellants' first assignment of error confuses the trial court's function to rule on evidence admissibility with the jury's function to weigh the evidence. In their briefs appellants correctly identify dozens of court decisions repeatedly supporting the law in Ohio according to *Stinson* and its progeny that when a party offers its explanation for plaintiff's injuries and introduces the testimony by an expert as to the proximate cause element for the tort of negligence, that opinion must be expressed as a probability (i.e.,

12.

that the expert's explanation has a greater than fifty percent likelihood that it produced the occurrence at issue) in order to be admissible evidence. *See id.*

{¶ 20} Contrary to appellants' assertions, we do not find these cases compel the jury to give any particular weight to appellants' expert opinion for appellants' theory of proximate causation or to any rebuttal testimony discounting appellee's theory of proximate causation such that as a matter of law "[p]laintiff-appellant reasonably ruled out the defense theory at trial." This court has previously stated that *Stinson*, a medical malpractice case, did not involve any alteration of the burden of proof but, instead, adopted a rule on admissibility of expert opinion testimony. *D'Amore v. Cardwell*, 6th Dist. Lucas No. L-06-1342, 2008-Ohio-1559, ¶ 86. In this case the evidence supporting the disputed theories of proximate cause were presented to the jury, and the record does not indicate any defect in how the jury discharged its duty to reach a verdict.

{¶ 21} Appellants also correctly identify decisions in *Stinson* and *Westinghouse* and their progeny supporting the law in Ohio that when a party introduces the testimony by an expert to rebut the other party's expert to controvert a fact propounded by the other party, the rebuttal expert's opinion need not be expressed as a probability because the rebuttal expert is not seeking to establish the probability for the rebuttal theory. *See Stinson*, 69 Ohio St.3d at 456-457, 633 N.E.2d 532; *see also Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 129, 326 N.E.2d 651 (1975) ("Suggestion of other causes is limited only by the limits of human imagination, and are not a basis for taking a case from the jury."). However, if the rebuttal expert at

13.

some point proposes his or her explanation for plaintiff's injuries with an opinion as to the proximate cause element of negligence, that rebuttal opinion must still be expressed as a probability in order to be admissible evidence. *See Stinson* at 456. Once again, we do not find these cases compelled the jury to conclude as a matter of law appellants "reasonably ruled out the defense theory."

{¶ 22} In this case it is not surprising each party's experts contradicted the other's theory of what proximately caused Ms. Pippo's injuries because the matter went to trial. Each party's expert declared his theory of the proximate cause of Ms. Pippo's injuries to be probable. The trial court admitted each expert's testimony, and the jury heard everything. The matter was left to the jury to decide who to believe and assign weight to the evidence. The trial court instructed, "It is your province and your duty to decide what testimony to believe and what testimony not to believe." The trial court further instructed the jury, "[Y]ou are the judges of the facts, the believability of the witnesses, and the weight to be assigned to the evidence." The trial court also instructed the jury, "[a]s with other witnesses, the jury alone has the duty of deciding what weight to give to the testimony of the experts."

{¶ 23} Appellants argue the jury heard three theories for Mr. Fitzgerald's negligence to explain the proximate cause of appellant Julia Pippo's ejection from the golf car: (1) appellants' expert's theory appellee Kevin Fitzgerald turned the golf car "too sharply and too fast," (2) appellees' expert's theory appellant Julia Pippo "was seated improperly [slumped or slouching] and went straight out the back of the golf cart

14.

through the hole," and (3) appellant Julia Pippo was "standing/kneeling at the time of ejection," a theory for which the record does not show a proponent by either party.

{¶ 24} The record shows appellants' expert Henry Lipian gave his opinion "based upon a reasonable degree of accident reconstructionist probability or certainty" to support the first theory of probable causation. Mr. Lipian testified he used an iterative process to exclude "possibility based on the available evidence and data and beginning to narrow it down within a range." By ruling out possibilities he then determined probability within a range of reasonableness. Mr. Lipian testified as to his numerous criticisms of the facts supporting appellees' theory of causation. "Based on the totality of everything that I reviewed in my analysis, the far greatest likelihood of the avenue of ejection was over the railing." The trial court admitted Mr. Lipian's testimony.

{¶ 25} Appellees' rebuttal expert David Bizzak gave his opinion "based on a reasonable degree of mechanical engineering certainty" to support the second theory of probable causation. Mr. Bizzak testified he took the eyewitness testimonies that Ms. Pippo "went out the back" of the golf car and determined the "only plausible means by which that could occur is if she was slumped, or slouching in the seat, toward the rear of the car, and she slips as the vehicle is moving and she goes out the back between the hip leg restraint and the hand hold." Mr. Bizzak explained golf cars are licensed motor vehicles, but golf carts are "what you pull behind you that has three wheels on it." He ruled out other theories, including appellants' theory, by "interpreting the testimony in terms of what is physically possible with regard to the performance of that golf car and

15.

what would have happened * * * It is the totality of the testimony." Mr. Bizzak also testified regarding his numerous criticisms of the facts supporting appellants' theory of causation. The trial court admitted Mr. Bizzak's testimony.

{¶ 26} Appellants also cite to a doctrine of alternative liability adopted by the Ohio Supreme Court, but we find it does not apply in this case.

> It should be emphasized that under this alternative liability theory, plaintiff must still prove: (1) that two or more defendants committed tortious acts, and (2) that plaintiff was injured as a proximate result of the wrongdoing of one of the defendants. Only then will the burden shift to the defendants to prove that they were not the cause of plaintiff's injuries. This doctrine does not apply in cases where there is no proof that the conduct of more than one defendant has been tortious.

*Minnich v. Ashland Oil Co.*, 15 Ohio St.3d 396, 397, 473 N.E.2d 1199 (1984). At trial the plaintiffs only presented evidence to the jury for one defendant, Kevin Fitzgerald, allegedly committing the tortious acts. Therefore, appellants did not meet the first element under the alternative liability theory doctrine.

{¶ 27} Our review of the entire jury instructions and record in this case confirms the trial court's instructions to the jury were legally correct, complete and not materially misleading. We find these jury instructions were factually warranted by the evidence presented in the case with respect to appellant Julia Pippo's claims of negligence and/or recklessness by appellee Kevin Fitzgerald. The trial court did not abuse its discretion for

16.

the form of instructions given to the jury. The jury had the sole duty to accept and weigh, or reject, the expert testimony presented to them. Appellants rely on speculation of the overwhelming impression the jury should have viewed or understood the facts advanced by appellants to meet their evidentiary burdens at trial. We find the record contains substantial evidence to support the jury's verdict. We will not disturb the jury's determinations of the facts as applied to the correct instructions of the law that led them to reach their verdict. *See Cromer*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 45.

{¶ 28} Appellant's first assignment of error is not well-taken.

{¶ 29} In light of our decision on the first assignment of error, appellants' second assignment of error is moot. App.R. 12(A)(1)(c).

{¶ 30} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                              JUDGE

Arlene Singer, J.

                                    _____
Thomas J. Osowik, J.                          JUDGE
CONCUR.

                                    _____
                                              JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.